UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SOMINKCOLE CONNER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-CV-385-SPM |
| STEVEN SCAGLIONE, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Acceptance Indemnity Insurance Company's Motion to Dismiss. (Doc. 13). The motion is opposed by both Plaintiff Sominkcole Conner and Defendant Steven Scaglione. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 18). For the following reasons, the motion will be granted.

**I.    FACTUAL BACKGROUND**

This is an equitable garnishment action brought by Plaintiff Sominkcole Conner ("Plaintiff") against Defendant Acceptance Indemnity Insurance Company ("Defendant Acceptance"), to satisfy a judgment Plaintiff obtained against Defendant Steven Scaglione ("Defendant Scaglione"), the owner and operator of a bar/nightclub where Plaintiff was injured.

**A. The Underlying Action**

On March 25, 2020, Plaintiff Conner and a second individual, Robert Kinney, filed a lawsuit in the Circuit Court of St. Louis City, State of Missouri against four defendants: Defendant Scaglione; Stefano's, LLC, Maurizio's Brothers Corporation, and Calvin Wilson. Def.'s Ex. 1, Doc. 13-1. The claims alleged arose out of a shooting that occurred on June 16, 2019, at Voce Bar

in downtown St. Louis, that led to severe injuries to Plaintiff Conner and Mr. Kinney. *Id.* at ¶ 1. Plaintiff alleged that Defendant Scaglione owned, leased, managed, operated, possessed, controlled, maintained, and/or supervised Voce Bar. *Id.* at ¶ 6. She alleged that prior to June 16, 2019, numerous prior incidents of violent crimes had taken place against persons on and near the Voce Bar premises, and that all of the defendants knew and/or had reason to know that there was a high likelihood that a third person would endanger the safety of its invitees. *Id.* at ¶ 14 She also alleged that the defendants had actual knowledge that, especially during its late night and early morning hours, Voce Bar's patrons carried knives and firearms. *Id.* at ¶ 16. She alleged that the defendants employed some security measures that were inadequate, including placing a "No Fire Arms Allowed" sticker on the front door and employing inadequately trained and equipped security personnel at entrances. *Id.* at ¶ 17.

Plaintiff alleged that on June 16, 2019, she visited Voce Bar; that on that date Defendants' security personnel were required to, and wer,e frisking patrons to prevent anyone from entering with dangerous weapons; and that Defendants negligently allowed several patrons into the premises with guns, including an individual named Donald Clark, Jr. *Id.* at ¶¶ 18-20. Donald Clark, Jr., was a regular at the subject premises, and Defendants knew that he was an individual with violent propensities. *Id.* at ¶ 22. Plaintiff alleged that at Voce Bar, Mr. Clark approached and threatened Mr. Kinney, and that at around 1:00 a.m. Mr. Clark began assaulting Mr. Kinney, drew a firearm from his waistband, and fired five shots. *Id.* at ¶¶ 24-30. Three of the shots struck Mr. Kinney, and two struck bystanders, including Plaintiff Conner. *Id.* at ¶¶ 31-32. Plaintiff Conner suffered serious, disabling, and permanent injuries. *Id.* at ¶ 34. She asserted counts of premises liability, negligence, and negligent performance of an undertaking to render services. *Id.*

### B. The Insurance Policy

At the time of the incident giving rise to the Underlying Action, Defendant Scaglione had an insurance policy issued by Defendant Acceptance. Pet'n, Doc. 4,. at ¶ 7. The Policy provides, in relevant part, as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>
>   (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

Ex. 1 to Pet'n, Doc. 4-1, at pp. 28-29. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at p. 39. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 41.

The policy also contains the following provision (the "Assault & Battery Exclusion"):

> **EXCLUSION - ASSAULT AND/OR BATTERY**
>
> This Insurance does not apply to:
>
>   **A.**  Any claims arising out of Assault and/ or Battery, including actual or alleged Sexual Assault and/ or Sexual Battery; or
>
>   **B.**  Any act or omission in connection with the prevention or suppression of such

    acts, whether caused by or at the instigation or direction of you, your employees or volunteers, patrons or any other persons; or

  C. Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing are not covered.

  We shall have no obligation to defend you, or any other insured, for any such loss, claim or suit.

  All other terms and conditions of the policy remain unchanged.

*Id.* at p. 10.

### C.  The Arbitration and Award

At the time of the incident giving rise to the Underlying Action, Defendant Scaglione had an insurance policy issued by Defendant Acceptance, but Defendant Acceptance did not provide a defense or indemnity to Scaglione under the Policy for the Underlying Action. Pet'n, Doc. 4,. at ¶¶ 7, 11-13. Plaintiff and Defendant Scaglione agreed to arbitrate the matter pursuant to Mo. Rev. Stat. § 537.065, and Defendant Scaglione provided written notice of the agreement to Defendant Acceptance. *Id.* at ¶¶ 14-15. On December 22, 2020, an arbitration was held, with a full evidentiary hearing. *Id.* at ¶¶ 16-17. The arbitrator entered an arbitration award in favor of Plaintiff and against Defendant Scaglione that disposed of all claims and issues that were in controversy between the parties. *Id.* at ¶ 18. On January 26, 2021, the Circuit Court of the City of St. Louis entered a judgment confirming the arbitration award. *Id.* at ¶ 19.

### D.  Plaintiff's Equitable Garnishment Claim

Plaintiff now brings a single count of Equitable Garnishment against both defendants pursuant to Mo. Rev Stat. § 379.200, alleging that she is entitled to have either or both Defendants satisfy the judgment in full if, after thirty days, it has not been satisfied. *Id.* at ¶ 23.[1] Plaintiff also

---

[1] Defendant Scaglione later filed a crossclaim against Defendant Acceptance, alleging bad faith refusal to defend, bad faith refusal to settle, and breach of fiduciary duty.

alleges that Defendant Acceptance, in bad faith, failed to provide a defense and failed to provide indemnity to Defendant Scaglione. *Id*. at ¶ 22.

Defendant Acceptance now moves to dismiss Plaintiff's claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claim fails as a matter of law because the injuries alleged by Plaintiff are barred by an exclusion in the insurance policy.

## II.     LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint "does not need detailed factual allegations" to survive a motion to dismiss, but it must contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007). When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, though it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. Additionally, "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

## III.     DISCUSSION

Because this Court's jurisdiction in this case is based on diversity of citizenship, state law governs the substantive issues in this case. *See, e.g., Am. Home Assur. Co. v. Pope*, 591 F.3d 992,

998-99 (8th Cir. 2010) ("In a diversity action, such as this, we use state substantive law to govern our analysis.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that Missouri provides the governing law. In interpreting state law, a federal court "is bound by the decisions of the state's highest court." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) (quoting *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003). "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue.'" *Id.* (quoting *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006)). In making that determination, the decisions of intermediate state appellate courts are persuasive authority. *Id.*

### A. Equitable Garnishment

Plaintiff brings this equitable garnishment claim pursuant to Mo. Rev. Stat. § 379.200. "An equitable garnishment action is a legal proceeding, authorized by [Mo. Rev. Stat. § 379.200], to reach insurance money in satisfaction of a judgment." *Kretsinger Real Est. Co. v. Amerisure Ins. Co.*, 498 S.W.3d 506, 510 (Mo. Ct. App. 2016) (quoting *McDonald v. Ins. Co. of State of Pa.*, 460 S.W.3d 58, 67 (Mo. Ct. App. 2015)) (internal quotation omitted). "The underlying judgment is binding on the insurer by way of the doctrine of collateral estoppel." *Id.* (quoting *McDonald*, 460 S.W.3d at 67)). To establish an equitable garnishment claim, Plaintiff has the burden of proving three elements: (1) that she obtained a judgment in her favor against Defendant Acceptance's insured (Defendant Scaglione); (2) that Defendant Acceptance's Policy was in effect when the incident occurred; and (3) that Defendant Acceptance's Policy covered the damages awarded in the Underlying Action against Scaglione. *Id.* at 510-11. Defendant Acceptance, however, bears the burden of showing that an exclusion bars coverage under the policy. *Id.* (citing *Village at Deer*

*Creek Homeowners Ass'n v. Mid-Continent Cas. Co.*, 432 S.W.3d at 231, 239 (Mo. Ct. App. 2014)).

### B. The Insurer's Duties

Under Missouri law, "An insurer owes two distinct duties to its insured: a duty to indemnify and a duty to defend." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014). "The insurer's duty to defend, though broader than its duty to indemnify, arises only when there is a potential or possible liability to pay based on the facts at the outset of the case." *Id.* (quotation marks omitted). "In determining whether an insurer has a duty to defend, the Court first compares the policy language with the allegations in the petition from the underlying lawsuit. If the underlying petition alleges facts that give rise to a claim potentially covered by the policy, the insurer has a duty to defend." *Id.* (internal citation omitted). In addition, the insurer "has a duty to defend if facts that are known to the insurer, or that are reasonably apparent to the insurer, at the commencement of the suit establish a potential for coverage." *Id.* However, "An insurer does not have a duty to defend a suit where the petition upon its face alleges a state of facts which fail to bring the case within the coverage of the policy." *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007) (quotation marks omitted). Generally, "'where there is no duty to defend, there is no duty to indemnify.'" *Brand v. Kansas City Gastroenterology,* 414 S.W.3d 546, 556 (Mo. Ct. App. 2013) (quoting *Am. States Ins. Co. v. Herman C. Kempker Constr.* Co., 71 S.W.3d 232, 236 (Mo. Ct. App. 2002)).

### C. Rules of Construction

Under Missouri law, the rules governing the interpretation of insurance policies are well-settled. "When interpreting insurance policy language, courts give a term its ordinary meaning unless it plainly appears that a technical meaning was intended." *Mendenhall v. Prop. & Cas. Ins.*

*Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. 2012) (citing *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997)). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999). "To determine the ordinary meaning, this Court consults standard English language dictionaries." *Id.*; *see also Mendenhall*, 375 S.W.3d at 92.

### D. The Assault and Battery Exclusion

Defendant argues that Plaintiff cannot state a claim for equitable garnishment because the Policy's Assault and Battery Exclusion applies to bar coverage for Plaintiff's claims in the Underlying Action. Plaintiff argues that this exclusion does not apply to bar coverage for two reasons. First, she argues that because she was a bystander and not the intended victim of the assault and battery that occurred at Voce Bar, the exclusion does not apply to her claims. Second, she argues that even if an assault and battery was a cause of her injuries, coverage exists for her negligence claims under Missouri's concurrent proximate cause doctrine, because Defendant Scaglione's negligence was an independent and distinct cause of her injuries.

The Court begins with an analysis of whether, under the language of the Policy, the Assault and Battery Exclusion applies to Plaintiff's claims in the Underlying Action. That exclusion states, in relevant part, that the Policy "does not apply to . . . Any claims arising out of Assault and/ or Battery . . . ." It further states, "We shall have no obligation to defend you, or any other insured, for any such loss, claim or suit." "Assault" is defined in the dictionary as "a violent physical or verbal attack" or "a threat or attempt to inflict offensive physical contact or bodily harm on a person (as by lifting a fist in a threatening manner) that puts the person in immediate danger of or in apprehension . . . of such harm or contact." http://www.merriam-webster.com/dictionary/assault (last visited September 13, 2021). "Battery" is defined as "the act of beating someone or something

with successive blows: the act of battering" or "an offensive touching or use of force on a person without the person's consent." http://www.merriam-webster.com/dictionarv/battery (last visited September 13, 2021). *See also Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 380 (Mo. Ct. App. 2013) (citing and applying the same definitions to language in an insurance policy; stating, "when the terms are considered in their ordinary meaning, the policy's assault and battery exclusion is not ambiguous and encompasses any conduct within the meaning of the terms"). The allegations in the Underlying Action were that Mr. Clark approached Mr. Kinney, that Mr. Clark "began to assault" Mr. Kinney, that Mr. Clark "drew a firearm from his waistband," that Mr. Kinney tried to stop Mr. Clark from shooting him, and that and Mr. Clark "fired five (5) shots," three of which struck Mr. Kinney and two of which struck bystanders, including Plaintiff. These allegations plainly encompass conduct with the first dictionary definition of "assault" and the second dictionary definition of "battery." It is clear that an assault and/or a battery occurred when Mr. Clark fired a gun at Mr. Kinney, and Plaintiff's claims in the Underlying Action—for damages she suffered from the gunshots fired by Mr. Clark—plainly "aris[e] out of" that assault and/or battery.

The Court is not persuaded by Plaintiff's argument that the Assault and Battery Exclusion applies only to injuries to intended victims, and not unintended victims, of an assault or battery. The Court finds no language, either in the Policy or in the dictionary definitions of the terms, that would support this reading; instead, the language broadly encompasses all claims "arising out of" an assault or battery. The only authority Plaintiff cites in support of this argument, *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15 (Mo. Ct. App. 2019), is unpersuasive. In *Adams*, another case involving a bystander shot by gunfire, the court found that  the allegations in the underlying lawsuit did not necessarily show that an insurance policy's assault and battery exclusion applied to the claims in the underlying lawsuit. *Id.* at 29. However, the court's conclusion

was not based on a finding that victim was not the intended victim of the assault and/or battery, but on a finding that the underlying petition alleged *no assault or battery of anyone*. The court noted that the petition "alleges [the victim] was shot when an unknown individual 'recklessly fired stray bullets' into the crowd,' and that "[w]hile this leaves open the possibility [the plaintiff's son] was the *intended or unintended victim* of an assault and/or battery, it does not prove it." *Id.* at 29 (emphasis added). The court later noted that the petition alleged that the victim was "struck by a random bullet fired recklessly by an unknown individual, *without any intent to assault or batter anyone*." *Id.* at 33.[2] Here, in contrast, the allegations in the Underlying Action make it clear that an assault and/or battery occurred, with Mr. Kinney being the intended victim and Plaintiff being an unintended victim.

The Court next considers whether Missouri's concurrent proximate cause rule applies to require coverage of the claims in the Underlying Action. Under the concurrent proximate cause rule, "an insurance policy will be construed to provide coverage where an injury was proximately caused by two events—even if one of these events was subject to an exclusion clause—if the differing allegations of causation are independent and distinct." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 347 (Mo. 2015) (quoting *Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 88 (Mo. Ct. App. 2012)). "For the rule to apply, the injury must have resulted from a covered cause that is truly 'independent and distinct' from the excluded cause. *Id.* at 348 (citing *Am. States Ins. Co., Inc. v. Porterfield*, 844 S.W.2d 13, 14 (Mo Ct. App. 1992)).

Plaintiff argues that Defendant Scaglione's negligence was a cause of her injuries that is separate from the assault and battery committed by the third party, such that the concurrent

---

[2] It appears that the court in *Adams* implicitly found that in order for an assault or battery to have occurred, there must have been some intended victim (whether or not it was the plaintiff). This Court need not reach that issue, because in this case there is clearly an intended victim.

proximate cause doctrine applies. In the briefing, the parties have identified conflicting Missouri case law on the question of whether the concurrent proximate cause rule would apply in a situation similar to the case at bar.

Defendant relies principally on *Hunt v. Capitol Indemnity Corp.*, 26 S.W.3d 341 (Mo. Ct. App. 2000). In *Hunt*, the parents of a stabbing victim sued the owner of the establishment where the stabbing occurred, alleging that the owner negligently failed to protect their son from his assailants. *Id.* at 342. They obtained a judgment, but the owner's insurance policy contained an exclusion that stated, "[t]his insurance does not apply to *bodily injury*, *property damage* or *personal injury* arising out of assault, battery, or assault and battery." *Id.* at 343. The plaintiffs argued that the concurrent proximate cause rule should apply, because the owner's negligence was a separate and non-excluded cause of the victim's injuries. *Id.* at 344. Reversing the trial court, the Missouri Court of Appeals rejected that argument. *Id.* It stated:

> In this case, the assault and battery is not incidental to plaintiffs' negligence claims. The damages arise from the assault and battery. Without the underlying assault and battery, there would have been no injury and therefore no basis for plaintiffs' action against [the insured] for negligence. The assault and battery and [the insured's] negligence are not mutually exclusive; rather, the acts are related and interdependent. [The owner's] negligence was not a separate and non-excluded cause apart from the assault and battery.

*Id.*

Both the Eighth Circuit and judges in this district have relied on *Hunt* in analyzing concurrent proximate cause arguments. In analyzing whether a cause is separate and independent, these courts have generally considered whether, absent the excluded cause, there would have been a basis for the claims supposedly covered. *See Am. Fam. Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006) ("In determining whether there are concurrent proximate causes of an injury, Missouri courts examine whether each alleged cause could have independently brought about the injury . . . [J]ust as there would have been no injury in *Hunt* if there were no assault and battery,

there would have been no injury in the case at bar if [the excluded incident had not occurred]. Therefore, as in *Hunt*, the allegedly dangerous condition was not an independent cause of the decedent's deaths"); *Allstate Ins. Co. v. Blount*, 491 F.3d 911-12 (8th Cir. 2007) (relying on *Hunt* and *Co Fat Le* and rejecting the argument that the concurrent cause doctrine applied; stating, "without [the insured's] underlying act of [performing an excluded act], there would be no injury and no basis for the wrongful death suit . . . Because Appellees have failed to show that the covered negligence claims could have independently brought about the victim's injury and resulting death, the concurrent cause doctrine is not applicable."); *Nationwide Affinity ins. Co. v. Rutledge*, No. 4:15-CV-1757-RWS, 2017 WL 85907, at *5 (E.D. Mo. Jan. 10, 2017) ("For the concurrent proximate cause doctrine to apply, [the defendant's] conduct [falsely telling the attacker the victim had behaved inappropriately] would need to be an independent and distinct cause of [the victim's] injuries. However, [the victim's] claims against [the defendant] necessarily rely upon [the victim's] claims against [the attacker]—without the excluded assault and battery, [the victim] would not have been injured and there would be no basis for [the victim's] action against [the defendant]. Therefore, the concurrent proximate cause doctrine does not require coverage under the circumstances.").

In addition, courts in this district considering assault and battery exclusions have sometimes rejected arguments similar to Plaintiff's argument here without expressly discussing the rule of concurrent proximate cause. *See Century Surety Co. v. Euro, Inc.*, No. 4:12-CV-1320 (CEJ), 2013 WL 2292043, at *3 (E.D. Mo. May 24, 2013) (rejecting the argument that negligence claims against a nightclub where the victim was beaten did not arise from an assault and battery for purposes of a policy exclusion; stating, "If the 'real contention' in the underlying suit is that the plaintiff's injuries arose out of an assault and battery, which in its turn arose out of defendant's

negligence, the injuries are 'unambiguously excluded from coverage by the assault and battery exclusion.' In the instant case, [the victim]'s 'real contention' is that he was injured as the result of an assault and battery which occurred due to [the insured's] negligence. Therefore, coverage is excluded.") (quoting *Capitol Indem. Corp. v. Callis*, 963 S.W.2d 247, 250 (Mo. Ct. App. 1997); (internal citation omitted); *Alea London, Ltd. v. George Maxwell*, No. 4:05-CV-1240-HEA, 2006 WL 839220, at *3 (E.D. Mo. Mar. 28, 2006) (relying on *Hunt* and rejecting the argument that the assault and battery exclusion did not apply because it did not exclude the various negligent acts or omissions that were alleged in the underlying lawsuit; stating, "Although the injuries and death . . . may have been caused by the negligent acts of the [insured], that does not mean that they did not arise out of an assault and/or battery. [The victim's father's] real contention in the underlying suit is that his son's death arose out of an assault and battery, which in turn arose out of the [insured's] negligence. Therefore, the incident is plainly and unambiguously excluded from coverage by the policy's assault and battery exclusion."). *Cf. Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007) (rejecting the argument that an assault and battery exclusion did not exclude coverage for claims of negligence; stating, "'Although the injuries may have been caused by the negligent acts of the defendant, that does not necessarily mean that they did not arise out of an assault or battery.' Under the circumstances presented here, where a plaintiff's claim negligence claim arises out of an assault or battery, the assault or battery exclusion bars coverage of the insured's negligence claim." (quoting *Callis*, 963 S.W.2d 247) (internal citation omitted).

Plaintiff, on the other hand, relies principally on *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15 (Mo. Ct. App. 2019). In *Adams*, the parents of a minor who was inadvertently struck and killed by a stray bullet fired recklessly outside a nightclub sued the

owners, alleging a negligent failure to provide security. *Id.* at 21-22. The applicable insurance policy contained an exclusion for injury "arising out of an assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery." *Id.* at 22. The court noted some uncertainty in whether an assault or battery had occurred; however, it found resolution of that question unnecessary, instead affirming the trial court's determination that "even had an assault and battery occurred, [the defendants'] negligence was a covered concurrent proximate cause of [the victim's] injury." *Id.* at 29. The court first noted that assault and battery was not alleged to have occurred, nor was assault or battery an essential element of the negligence claim in the underlying action. *Id.* at 33. It further noted that a negligence claim requires a finding of proximate cause, and that for an act to constitute the proximate cause of an injury, "*some* injury, if not the precise one in question, must have been reasonably foreseeable." *Id.* at 33 (quotation marks omitted). The court then noted that the underlying petition "alleges many acts committed by [the defendants] that might have conceivably exposed [the victim] to a wide range of foreseeable harms," including being "struck by a random bullet fired recklessly by an unknown individual, without any intent to assault or batter anyone, which is precisely what the Petition claims occurred." *Id.* The court found that an assault and/or battery, if it occurred, was simply the "instrumentality of [the victim's] injury" and was "merely incidental to the negligence of [the defendants]." *Id.* It concluded that "because assault and battery is only incidental to the negligence claim, and the negligence claim in no way relies on the occurrence of an assault and battery for its success, assault and battery and negligence are independent and distinct causes of Willis's injury, making the concurrent proximate cause rule applicable." *Id.* at 33-34.

*Adams* appears to be in conflict with *Hunt* and the other cases cited above. Neither party has provided, and the Court has not found, any Missouri Supreme Court cases that would assist the Court in assessing which approach that court would be more likely to follow. After careful consideration, the Court predicts that on the facts presented here, the Missouri Supreme Court would likely follow the approach articulated in *Hunt* and the federal cases above and would find the concurrent proximate cause doctrine inapplicable in this case. The Missouri Supreme Court has noted that "[f]or the rule to apply, the injury must have resulted from a covered cause that is truly 'independent and distinct' from the excluded cause." *Taylor*, 457 S.W.3d at 348. Here, the Court cannot say that the negligence alleged in the petition was "independent and distinct" from the assault and battery that caused Plaintiff's injuries. Plaintiff's "real contention" is that she was injured as a result of an assault and battery that occurred due to Defendant Scaglione's negligence. Without the assault and/or battery, Plaintiff would have had no injury from the alleged negligence and no negligence claim. Because the two causes are related and interdependent, not independent and distinct, the concurrent proximate cause doctrine does not apply here.

Because the allegations in the Underlying Action demonstrate that Plaintiff's claims were excluded from coverage under the Policy, Plaintiff cannot establish the elements of an equitable garnishment claim.

## IV.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Acceptance Indemnity Insurance Company's Motion to Dismiss. (Doc. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim against Defendant Acceptance Indemnity Insurance Company is **DISMISSED**, with prejudice.

                                                            _____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of October, 2021.